# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ENCORE PREAKNESS, INC, f/k/a )
SELECT MEDICAL REHABILITATION )
SERVICES, INC. )
                                   )
             Plaintiff, )
                                   )
v.                               )    C.A. No. N17C-03-1677 AML
                                   )
CHESTNUT HEALTH AND )
REHABILITATION GROUP, INC; )
CH-BLUE HILLS, LLC; )
CH-BRIGHAM, LLC; CH-COUNTRY )
GARDENS, LLC; CH-CRAWFORD, LLC; )
CH-CROSSINGS EAST, LLC; )
CH-CROSSINGS WEST, LLC; )
CH-DEN-MAR, LLC; CH-FRANKLIN, )
LLC; CH-HANOVER, LLC; CH-OAK )
HILL, LLC; CH-PARKWAY PAVILION, )
LLC; CH-QUINCY, LLC; CH-WALDEN, )
LLC; CH-WYOMISSING, LLC; KANE )
FINANCIAL SERVICES, LLC; AIRAMID )
HEALTH SERVICES, LLC f/k/a )
AIRAMID HEALTH MANAGEMENT, )
LLC; AIRAMID HEALTH CONSULTING, )
LLC; and DEBRA HOWE, )
                                   )
            Defendants. )

Submitted: September 25, 2017
Decided: November 1, 2017

## MEMORANDUM OPINION

**Upon Defendants' Motion to Dismiss, Granted in part, Denied in part**

Christopher J. Day, Esq. of DAY LAW GROUP, LLC, Wilmington, Delaware; Attorneys for Encore Preakness, Inc.

Nancy S. Rappaport, Esq. and Brian A. Biggs, Esq. of DLA PIPER LLP, Wilmington, Delaware, and Brooke Madonna, Esq. of SPECTOR GADON & ROSEN, Philadelphia, Pennsylvania; Attorneys for Defendants KANE FINANCIAL SERVICES, LLC; AIRAMID HEALTH SERVICES, LLC f/k/a AIRAMID HEALTH MANAGEMENT, LLC AIRAMID HEALTH CONSULTING, LLC; and DEBRA HOWE.

**J. LeGROW**

This action involves a dispute over unpaid invoices for therapy services the plaintiff performed at various nursing facilities under a series of contracts with those facilities. The plaintiff contends those invoices should have been paid by the facilities or their unaffiliated management companies, which separately contracted with facilities to perform financial and operational services. In other words, two sets of contracts define the parties' rights and obligations: (1) therapy service contracts between the plaintiff and the facilities; and (2) financial services contracts between the facilities and the defendant management companies. No direct contractual relationship existed between the plaintiff and the defendant management companies.

Shortly after being sold to a third party, the facilities defaulted on payments owed to the plaintiff. Although they allegedly collected insurance payments for the plaintiff's services to facilities, the defendant management companies also have not remitted that payment to the plaintiff. The plaintiff therefore has sued not just the facilities, but also the defendant management companies for breach of contract, unjust enrichment, and tortious interference with contract. The management companies contend those claims should be dismissed.

This case explores fundamental contractual principles, particularly privity, and the circumstances, if any, under which a person not a party to a contract may pursue a claim arising from that contract. In this case, the plaintiff's claims against

1

the defendant management companies for unjust enrichment and breach of contract are barred by settled principles of Delaware contract law. The plaintiff has, though barely, alleged a reasonably conceivable claim that the management companies tortiously interfered with the plaintiff's contract with the facilities. My reasoning follows.

## I.    FACTUAL BACKGROUND

The following facts are drawn from the complaint and the documents it incorporates, drawing all reasonable references in favor of the plaintiff. Before March 2016, Chestnut Group ("the Facilities") operated long-term nursing care facilities in Massachusetts, Connecticut, New Hampshire, Rhode Island, and Pennsylvania through various Delaware limited liability companies. Kane Financial Services, LLC, Airamid Health Services, LLC, and Airamid Health Consulting, LLC (collectively, the "Moving Defendants") provided management and financial services to Facilities under several Financial Consulting Agreements ("FCAs") that predated plaintiff's contracts with the Facilities.[1]

Early in 2016, Facilities solicited Encore Preakness ("Plaintiff") to provide staffing services at Facilities' care centers. On February 1, 2016, Plaintiff and Facilities entered into Therapy Services Agreements ("TSAs") for fourteen of Facilities' care centers. Under the TSAs, Plaintiff supplied Facilities' care centers

---

[1] Compl. ¶ 39.

2

with speech, occupational, and physical therapy services. At the end of February, Plaintiff billed Facilities $670,156.32. In March 2016, Facilities sold the fourteen care centers to Northern Hills Senior Living Centers and Wachusett Health Management.

After the sale, Facilities failed to pay Plaintiff for the February invoices. Plaintiff alleges Moving Defendants billed the applicable third party payors, including Medicare and Medicaid, for the February invoices and received payment from those payors. Plaintiff further alleges Facilities and Moving Defendants wrongfully have withheld payment to Plaintiff for the February invoices, despite informal and formal demands for payment.

On March 31, 2017, Plaintiff filed this action. In the complaint, Plaintiff asserted claims against Facilities for breach of contract, unjust enrichment, and conversion. Plaintiff also asserted claims against Moving Defendants for unjust enrichment, breach of contract, tortious interference, conversion, and piercing the corporate veil. Facilities made no response to the complaint and Plaintiff has moved for default judgment against them.[2] Moving Defendants moved to dismiss the claims against them for failure to state a claim. In its opposition to the motion to dismiss, Plaintiff withdrew its claims for conversion and veil piercing.

---

[2] D.I. 60-75.

3

## II. THE PARTIES' CONTENTIONS

Plaintiff alleges Moving Defendants unjustly were enriched by withholding Plaintiff's payment for the February invoices. Plaintiff argues it is not a party to the FCAs and therefore is not barred from seeking relief through unjust enrichment based on Moving Defendant's performance under the FCAs. Moving Defendants argue Plaintiff is barred from seeking relief through unjust enrichment because the FCAs and TSAs govern the parties' relationships and, although Plaintiff is not a party to the FCAs, it cannot maintain an unjust enrichment claim regarding services Moving Defendants allegedly were required by contract to perform.

Plaintiff also claims it is a third party beneficiary to the FCAs because the FCAs provided that Moving Defendants would forward payment to Facilities' vendors from third party payors, like Medicaid and Medicare. Plaintiff thus argues it was an intended beneficiary of the FCAs and is entitled to seek relief for breach of those contracts. Moving Defendants counter that Plaintiff is, at most, an incidental beneficiary and therefore may not maintain an action for breach of contract.

Finally, Plaintiff claims Moving Defendants tortiously interfered with Plaintiff's contract with Facilities by withholding payment for the February invoices without justification. Moving Defendants counter that they were justified

4

in performing their contracts with Facilities. Moving Defendants deny paying themselves at the expense of Facilities' vendors, like Plaintiff.

## III. ANALYSIS

On a motion to dismiss, the Court must determine whether the "plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof."[3] "If [the plaintiff] may recover, the motion must be denied."[4] A court may grant the motion if "it appears to a reasonable certainty that under no state of facts which could be proved to support the claim asserted would plaintiff be entitled to relief."[5] When applying this standard, the Court will accept as true all non-conclusory, well-pleaded allegations.[6] In addition, "a trial court must draw all reasonable factual inferences in favor of the party opposing the motion."[7]

### A. Unjust enrichment is not available because the TSAs and FCAs govern the parties' relationships.

Moving Defendants argue Plaintiff cannot bring an unjust enrichment claim when a contract governs the parties' relationship. To plead a claim for unjust

---

[3] *Holmes v. D'Elia*, 129 A.3d 881 (Del. 2015) (citing *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978)).

[4] *Deuley v. DynCorp Int'l, Inc.*, 2010 WL 704895, at *3 (Del. Super. Feb. 26, 2010) (citing *Parlin v. DynCorp Int'l, Inc.*, 2009 WL 3636756, at *1 (Del. Super. Sept. 30, 2009) (quoting *Spence*, 396 A.2d at 968)), *aff'd*, 8 A.3d 1156 (Del. 2010).

[5] *Fish Eng'g Corp. v. Hutchinson*, 162 A.2d 722, 724 (Del. 1960) (citing *Danby v. Osteopathic Hosp. Ass'n of Del.*, 101 A.2d 308, 315 (Del. Ch. 1953), *aff'd*, 104 A.2d 903 (Del. 1954)); *Nero v. Littleton*, 1998 WL 229526, at *3 (Del. Ch. Apr. 30, 1998).

[6] *Pfeffer v. Redstone*, 965 A.2d 676, 683 (Del. 2009).

[7] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005) (citing *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998) (citing *Solomon v. Pathe Commc'ns Corp.*, 672 A.2d 35, 38 (Del. 1996)) (other citations omitted)).

enrichment, Plaintiff must allege: "(1) an enrichment, (2) an impoverishment, (3) a relationship between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[8] The Court of Chancery has held "[a] claim for unjust enrichment is not available if there is a contract that governs the relationship between the parties that gives rise to the unjust enrichment claim."[9] Although there are three parties here, instead of two, a contract governs each relationship between the parties and the allegedly enriched Facilities.

Plaintiff concedes it has a contractual relationship with Facilities through the TSAs, but argues no contract governs its relationship with Moving Defendants. This lack of privity between Plaintiff and Moving Defendants, however, does not mean Plaintiff is free to pursue its unjust enrichment claim. Plaintiff's complaint alleges the TSAs govern their relationship and incorporates the TSAs by reference.[10] In addition, the relationship between Facilities and Moving Defendants is governed by the FCAs.[11] The Court of Chancery has held:

> It is a well-settled principle of Delaware law that a party cannot recover under a theory of unjust enrichment if a contract governs the relationship between the contesting parties that gives rise to the unjust enrichment claim. As an extension of that principle, . . . unjust enrichment

[8] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).
[9] *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 891 (Del. Ch. 2009).
[10] Compl. ¶ 34-37.
[11] The existence of the FCAs, though not their express terms, is incorporated in the complaint.

cannot be used to circumvent basic contract principles [recognizing] that a person not a party to [a] contract cannot be held liable to it. Delaware courts consistently have held that where a contract exists no person can be sued for breach of contract who has not contracted either in person or by an agent, and . . . that the doctrine of unjust enrichment cannot be used to circumvent this principle merely by substituting one person or debtor for another.[12]

Under basic contractual principles, the Moving Defendants are not susceptible to a breach of contract claim except one brought by Facilities or third party beneficiaries to the contract. In addition, having entered into a binding contract with Facilities, Plaintiff cannot also pursue a claim for unjust enrichment relating to the subject matter of the contract. Plaintiff cannot, then, use clever labeling in pleadings to subvert these principles by asserting an unjust enrichment claim against the Moving Defendants. It is Facilities, and not the Moving Defendants, with whom Plaintiff contracted, and it therefore is Facilities to whom Plaintiff must look for payment. "[T]he inability of a party to a contract to fulfill an obligation thereunder cannot serve as a basis to conclude that other entities, who are not party to the contract, are liable for that obligation."[13]

---

[12] *Vichi v. Koninklijke Philips Electronics N.V.*, 62 A.3d 26, 58-59 (Del. Ch. 2012) (internal quotation marks omitted).
[13] *Id.* at 59.

Secondly, unjust enrichment only is available to the impoverished party if the enriched party is the defendant. As the Court of Chancery held in *United Health Alliance*,

> [T]o recover under a theory of quasi contract, a plaintiff must demonstrate that *services were performed for the defendant* resulting in its unjust enrichment. It is not enough that the defendant received a benefit from the activities of the plaintiff; if the services were performed at the behest of someone other than the defendants, the plaintiff must look to that person for recovery.[14]

In *United Health Alliance*, United Medical contracted to provide software for United Health Alliance ("UHA").[15] UHA used the software to provide administrative and billing services for Bayhealth Hospitalists, LLC ("BHH") and Christiana Medical Group ("CMG").[16] During a negotiation dispute, United Medical blocked UHA's access to the software.[17] As a result, BHH and CMG suffered damages due to UHA's inability to provide administrative and billing services.[18] BHH and CMG sought to recover damages resulting from the blockage by United Medical through a theory of unjust enrichment.[19] The Court of Chancery found United Medical unjustly was enriched, but at the expense of the

---

[14] *United Health Alliance, LLC v. United Medical, LLC*, 2014 WL 6488659, *8 (Del. Ch. Nov. 20, 2014) (quoting *MetCap Sec. LLC v. Pearl Senior Care, Inc.*, 2007 WL 1498989, at *6 (Del. Ch. May 16, 2007) (emphasis added).
[15] *Id.* at *2.
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.* at *8.

8

UHA, not BHH and CMG, because BHH and CMG made no direct payments to United Medical.[20] Rather, BHH and CMG had to seek recovery from UHA, not United Medical.[21] Here, as in *United Health Alliance*, Plaintiff performed no services for Moving Defendants. If Moving Defendants were enriched, it was at the expense of Facilities, not Plaintiff. Plaintiff therefore must look to Facilities for recovery.

Plaintiff nonetheless argues it may plead unjust enrichment as an alternative theory of recovery, notwithstanding the fact of the contracts. Although a party may at times plead both breach of contract and unjust enrichment claims, those instances are limited to cases where there is some question about the effectiveness or application of the contract at issue.[22] Plaintiff, however, has not alleged the TSAs or FCAs are ineffective or non-operative. Because Plaintiff concedes the contracts are operative and applicable to the parties' obligations here, Plaintiff is barred from raising an unjust enrichment claim, even as an alternative theory of recovery. Accordingly, Moving Defendants' motion to dismiss Count III is granted.

---

[20] *Id.*
[21] *Id.*
[22] *See Rossdeutscher v. Viacom, Inc.*, 768 A.2d 8, 23 (Del. 2001).

**B. Plaintiff is not a third party beneficiary of the FCAs because no pre-existing duty predated the contracts and benefitting Plaintiff was not a material purpose of the FCAs.**

Moving Defendants argue Plaintiff cannot sue under breach of contract because Plaintiff is neither a signatory to, nor a third party beneficiary of, the FCAs. Under Delaware law, a non-party to a contract cannot sue for breach of contract unless they are a third party beneficiary.[23]

> To qualify as a third party beneficiary, (i) the contracting parties must have intended that the third party beneficiary benefit from the contract, (ii) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person, and (iii) the intent to benefit the third party must be a material part of the parties' purpose in entering into the contract.[24]

The Plaintiff's claim to third party beneficiary status fails because it does not sufficiently plead facts satisfying the second and third elements. Rather, the pleadings demonstrate Plaintiff cannot satisfy those elements.

As to the second element, Facilities and Moving Defendants did not intend the FCAs to satisfy a pre-existing duty owed to Plaintiff. The FCAs took effect on March 19, 2014.[25] The TSAs were executed early in 2016, nearly two years after the FCAs took effect.[26] Because Facilities entered into the TSAs after they contracted with Moving Defendants, there is no reasonably conceivable set of facts

---

[23] *Madison Realty Partners 7, LLC v. Ag ISA, LLC*, 2001 WL 406268 (Del. Ch. April 17, 2001).
[24] *Id.*
[25] Financial Consulting Agreement (Ex. 1 to Def.'s Mot. Dismiss).
[26] Pls.' Resp. Br. to Defs.' Mot. Dismiss 2.

under which the fact finder could conclude that a pre-existing duty to Plaintiff existed at the time the FCAs took effect. Furthermore, Plaintiff did not plead that the FCAs were intended to satisfy a pre-existing duty to Plaintiff.

In its opposition to the motion to dismiss, Plaintiff relies heavily on *United Health Alliance* to support its claim of third party beneficiary status. In *United Health Alliance*, UHA provided administrative billing services to plaintiffs.[27] UHA later contracted with United Medical to obtain access to United Medical's software.[28] The Court of Chancery reasoned that UHA's subsequent contract with United Medical would have provided the benefit of billing services to plaintiffs, thereby satisfying UHA's pre-existing obligation to plaintiffs.[29]

Here, Plaintiff's reliance on *United Health Alliance* is inapposite because its contract with Facilities did not pre-date Facilities' contract with Moving Defendants. In *United Health* Alliance, plaintiffs were the first party to contract with the promisor (UHA). Here, Plaintiff was not the first party to contract with the promisor (Facilities), therefore its contract could not have been a pre-existing obligation.

As to the third element, no reasonable inference can be drawn from the complaint that any benefits Plaintiff received from the FCAs were material to the

---

[27] *United Health Alliance*, 2014 WL 6488659, *6.
[28] *Id.*
[29] *Id.*

parties' purpose in entering into the FCAs. Plaintiff does not allege that it was a material part of the FCAs' purpose, but instead claims it was a beneficiary because Moving Defendants were responsible for paying Facilities' vendors. Plaintiff thus argues it was intended to benefit from the FCAs in the same way every other vendor benefitted.

The type of beneficiary Plaintiff describes, however, is not an intended beneficiary, but rather an incidental one. Illustration 19 to Comment e to § 302 of the *Restatement (Second) of Contracts* demonstrates the difference between an incidental and intended beneficiary in a factually similar context.

> A contracts to erect a building for C. B then contracts with A to supply lumber needed for the building. C is an incidental beneficiary of B's promise, and B is an incidental beneficiary of C's promise to pay A for the building.[30]

In the same way that B is an incidental beneficiary of C's promise to pay A for the building, Plaintiff is an incidental beneficiary of Moving Defendants' promise to Facilities to forward payment from third party payors. As an incidental, subsequent beneficiary, any benefit conferred on Plaintiff was not a material purpose of the FCAs. For the foregoing reasons, I find Plaintiff fails to qualify as a third party beneficiary. Accordingly, Defendant's motion to dismiss Count IV is granted.

---

[30] RESTATEMENT (SECOND) OF CONTRACTS § 302 (AM. LAW INST. 2017).

12

**C. Fairly read, the complaint alleges Moving Defendants tortiously interfered with the TSAs.**

The elements of tortious interference are "(1) a contract (2) about which the defendant knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury."[31]

Moving Defendants argue performance of their contracts with Facilities is a complete justification for any alleged tortious interference with Plaintiff's contracts.[32] That argument, however, assumes Moving Defendants performed consistently with the terms of the FCAs. In other words, Moving Defendants cannot rely on the contracts as justification if they acted inconsistently with those contracts.[33]

Plaintiff's complaint alleges that Moving Defendants were required to remit to Plaintiff payments received from third party vendors, but failed to do so.[34] Accepting those allegations as true, the complaint, fairly read, alleges that Moving Defendants interfered with Plaintiff's contracts with Facilities and did so in violation of the Moving Defendants' contracts with Facilities.[35]

---

[31] *Lipson v. Anesthesia Services, P.A.*, 790 A.2d 1261, 1284 (2001).

[32] Def.'s Mot. Dismiss 27.

[33] *Nix v. Sawyer*, 466 A.2d 407 (Del. Super. 1983).

[34] Compl. ¶ 39.

[35] The complaint alleges Airamid Health Services and Airamid Health Consulting were involved in Facilities' financial operations and also withheld monies Facilities owed to Plaintiff. Compl. ¶ 46. The Moving Defendants argue only Kane provided financial management and, in Plaintiff's answering brief, Plaintiff alleges the Airamid Defendants only managed the facilities' operations, while Kane was responsible for Facilities' financial services. Pls.' Answering Br. 3. If the facts

13

Moving Defendants rely on *Kuroda v. SPJS Holdings, LLC*[36] to argue that Plaintiff may not pursue a tortious interference claim. The decision in *Kuroda*, however, is distinguishable from this case because the individual defendants seeking dismissal in *Kuroda* were managing members and therefore agents of the LLC defendants.[37] The Court in *Kuroda* concluded a party to a contract could not be sued for both breach of contract and tort, and the LLC's agents also could not be sued in tort absent allegations that they exceeded the scope of their authority. On the other hand, Moving Defendants in this case were neither affiliated with, nor agents of, the Facilities and, as a result, are susceptible to a claim for tortious interference with the TSAs.

For the foregoing reasons, I conclude Plaintiff could recover under a reasonably conceivable set of circumstances susceptible to proof. Accordingly, Moving Defendants' motion to dismiss Count V is denied.

## IV. CONCLUSION

For the foregoing reasons, Moving Defendants' Motion to Dismiss is **GRANTED** as to Counts III and IV and is **DENIED** as to Count V.

---

or contracts in issue later do not support the conclusion that the Airamid Defendants provided financial services to Facilities, the Airamid Defendants may file for summary judgment. The Court, however, cannot reconcile this factual dispute without looking outside the complaint, which it may not do in the current procedural posture.

[36] *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872 (Del. Ch. 2009).
[37] *Id.*

14