COURT OF CHANCERY
OF THE
STATE OF DELAWARE

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

August 19, 2022

***Via File & ServeXpress***
Jeffrey L. Moyer, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE  19801

***Via U.S. Mail & Electronic Mail***
Michael D. Kolias
17581 Quail Lane
Fort Myers, FL  33913
MichaelDKolias@gmail.com

RE:  ***Summit Fire & Security LLC v. Michael Kolias,***
Civil Action No. 2022-0460-MTZ

Dear Counsel and Mr. Kolias:

In this restrictive covenant dispute between a Florida fire suppression business and its former employee, a Florida resident, I write to address the pending motion to compel filed by plaintiff Summit Fire & Security LLC ("Summit"), and the motion for protective order filed by defendant Michael D. Kolias ("Kolias"). Because the motions overlap, I take each form of relief sought in turn.

## I.    Kolias's Interrogatory Responses

Summit's motion to compel seeks an order "compelling Kolias to respond to Summit's First Set of Requests for Production Directed to Defendant Michael Kolias and Summit's First Set of Interrogatories Directed to Defendant Michael Kolias."[1]  This request is now partially moot, as Kolias filed responses on August 7, 2022.[2]  I will address the remaining issues relating to this request, which concern the timing and substance of Kolias's responses.

In its August 10 reply, Summit asserts Kolias "has waived any objections to the scope and/or relevance of Summit's discovery requests" because his discovery responses were untimely.[3]  I decline to conclude that the timing of Kolias's pro se

---

[1] Docket Item ("D.I.") 54, at 1 [hereinafter "Summit Mot."].

[2] D.I. 64; D.I. 65.

[3] D.I. 67 ¶ 4.

responses has waived his defenses. Summit has made compliance with these deadlines more difficult by barraging Kolias with discovery requests and notices of subpoenas.[4] That said, going forward, Kolias must comply with Court-imposed deadlines or risk negative consequences.

As for the substance of Kolias's interrogatory responses Summit contests in its reply, I take each in turn.

- Interrogatory No. 6: Kolias's objection to this interrogatory as overbroad is sustained. No further response is required.

- Interrogatory Nos. 11 and 12: Kolias shall answer these questions to the best of his ability within 30 days. His objection misstates the question. Interrogatory 11 simply asks Kolias to identify those persons whom he has contacted about the Business,[5] except for those he contacted on Summit's behalf. Similarly, Interrogatory 12 simply asks Kolias to describe the date of any such contact, and what Kolias said.

- Interrogatory No. 16: I interpret Kolias's responses to be relying on and identifying specific documents he knows to be in Summit's possession. In this pro se matter, with this particular procedural history, I deem this response adequate. No further response is required.

- Interrogatory No. 17: Kolias has answered the question to the best of his ability. No further response is required.

---

[4] In addition to its interrogatories and requests for production of documents, Summit has served no fewer than twenty-three subpoenas, seeking both documents and testimony, on various entities. *See* D.I. 17; D.I. 18; D.I. 19; D.I. 20; D.I. 21; D.I. 22; D.I. 23; D.I. 24; D.I. 25; D.I. 26; D.I. 27; D.I. 28; D.I. 32; D.I. 35; D.I. 43; D.I. 44; D.I. 46; D.I. 47; D.I. 48; D.I. 45; D.I. 58; D.I. 59; D.I. 61.

[5] As defined by Plaintiff Summit Fire & Security LLC's First Set of Interrogatories Directed to Defendant Michael Kolias.

- Interrogatory No. 18: Kolias has disputed the factual premise of this interrogatory. No further response is required.

- Interrogatory No. 19: Kolias has responded to this interrogatory. No further response is required.

Summit's motion is **GRANTED IN PART.**

## II.    Summit's "Notice of Inspection" and Kolias's Document Production

Summit's objection to Kolias's document production brings me to Summit's second form of requested relief:  an order "compelling Kolias to provide his cell phone and personal computer for a forensic collection by a third-party vendor."[6] Kolias was served with Summit's first set of requests for production on June 14, 2022.[7]  Before his responses were due, Summit served on Kolias a "Notice of Inspection" (the "Notice") in which Summit "requests" that Kolias "permit Plaintiff to inspect his cell phone and personal computer for purposes of making a forensic copy."[8]  The Notice concludes with a vague statement: "The inspection will be attended by a third-party ESI collection vendor, Setec Investigations."[9]

On the date of Summit's proposed inspection, Kolias did not appear, and instead emailed Summit's counsel saying he could not agree to the inspection of his cell phone.[10]  Summit responded, explaining it intended the vendor to keep the collection in confidence until Summit and Kolias agreed on a search protocol, but that if Kolias would not agree, Summit asked him to share how he proposed to collect information from his devices.[11]  Kolias did not respond.  On July 11, 2022,

---

[6] Summit Mot. at 1.

[7] D.I. 17.

[8] Summit Mot. at Ex. 3; D.I. 42.

[9] *See* Summit Mot. at Ex. 3; D.I. 42.

[10] Summit Mot. at Ex. 5.

[11] *Id.*

he filed a motion seeking a protective order against the inspection of his phone and stating that he does not have a computer.[12]  Kolias filed his response to Summit's request for production on August 7.[13]

Summit's reply in support of its motion to compel bemoans Kolias's production of "three pages of self-collected text messages" between Kolias and his friend John Stanford, the owner of a Summit competitor for whose benefit Summit asserts Kolias has breached his restrictive covenants.[14]  Summit complains that metadata and attachments were not produced, and speculates that some text messages must be missing.[15]  Finally, Summit contends Kolias did not produce documents responsive to all of its requests.[16]  Summit concludes it is entitled to have a vendor image Kolias's phone.[17]  I disagree.

The Notice is not a valid discovery request under this Court's rules.  The wording of the Notice appears to contemplate providing Plaintiff unfettered access to Kolias's phone and computer.  Its language sounds in discovery rules allowing a requesting party to "enter upon land or other property . . . for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon."[18]  But the plain language of Court of Chancery Rules 26 and 34 differentiates requests to inspect documents from requests to inspect tangible things or land;[19] the Notice appears to wrongfully conflate the two.  Requesting to inspect Kolias's phone for purposes of obtaining

---

[12] D.I. 51 ¶ 16 [hereinafter "Kolias Mot."].

[13] D.I. 64.

[14] D.I. 67 ¶¶ 4–5.

[15] *Id.* ¶ 8.

[16] *Id.* ¶¶ 8–9.

[17] *Id.* ¶ 7.

[18] *See* Ct. Ch. R. 34(a)(1); *accord* Ct. Ch. R. 26(a).

[19] Rule 26(a) identifies several discrete methods of obtaining discovery, differentiating production of documents from production of "tangible things or permission to enter upon land or other property."  Rule 34(a) divides the Rule's "Scope" into two parts: (1) production of documents, and (2) entry upon land or other property.

documents effectively circumvents Rule 34 document discovery. It is my ardent hope and expectation that counsel did not draft the "Notice of Inspection" to mimic a mandatory notice supported by this Court's rules or precedent.

Summit has not shown entitlement to image Kolias's phone. Summit's request relies on three truisms in practice before this Court: 1) Kolias has an obligation to preserve any relevant information, 2) Kolias's devices likely contain relevant information, and 3) this Court frowns on a party collecting her own information for review and discovery. But Summit overlooks two facts: Kolias is proceeding pro se, and Kolias has not yet demonstrably failed to preserve information.[20] Self-collection is a problem for represented litigants and their custodians,[21] but it is by necessity the default for pro se litigants. This Court does not require that every pro se litigant turn her repositories over to a vendor of her adversary's choosing. Nor has this pro se matter revealed Kolias is unwilling or unable to meet his discovery obligations.[22] Rather, it appears he has been cooperative, responsive, and polite.

---

[20] Summit is one of many employer plaintiffs who have recently asked this Court for this same overreaching relief early in a restrictive covenant case, before a former employee defendant has fallen short of his discovery obligations. *See, e.g.*, *Dart Machinery Ltd. v. Arent*, C.A. No. 2022-0385-MTZ, at D.I. 1 (proposed order including provision compelling the defendant to subject his computers or devices to the plaintiffs' expert for imaging); *Savista, LLC v. Markert*, C.A. No. 2022-0348-LWW, at D.I. 1 (same); *AIP-CAS Holdings, LLC v. Marcaccio*, C.A. No. 2022-0578-LWW, D.I. at 3 (same). All of those requests have been denied.

[21] *See, e.g.*, *In re CBS Corp. Litig.*, 2018 WL 3762080, at *1 (Del. Ch. Aug. 7, 2018) (Order); *Guidelines to Help Lawyers Practice in the Court of Chancery* § 7(b)(iii), https://courts.delaware.gov/forms/download.aspx?id=99468 (last updated Aug. 2021) ("As a general matter, custodians and parties should not collect or review their own documents. The Court prefers that outside counsel or professionals acting under their direction perform these tasks. This may not be possible in all cases, with the most obvious example being pro se parties."). To be sure, this does not mean that the problems presented by a represented litigant engaging in self-collection are absent when a pro se litigant engages in self-collection.

[22] Indeed, that is the standard by which I have ordered a represented litigant to turn his repositories over to his adversary's vendor. *See DG BF, LLC v. Ray*, 2021 WL 5436868, at *3–4 (Del. Ch. Nov. 19, 2021).

Summit's explanation that it needs access to an image of Kolias's phone to obtain metadata and attachments falls short. Metadata can be useful, and in many circumstances I would require it be produced, but Summit has not demonstrated it is necessary or proportional to the needs of this case.[23] Summit has simply speculated Kolias may have deleted or withheld text messages. If Summit was concerned about document retention, it could have asked about Kolias's practices of retaining text messages in its interrogatories. It failed to do so. Absent evidence that Summit's concerns are justified, I will not require Kolias to produce text messages in another form.

The parties shall confer on the mechanics of Kolias's document production. Kolias shall produce attachments to text messages he has already produced. But as to the Notice, Summit's motion is **DENIED** and Kolias's motion is **GRANTED**.

As for Summit's additional document requests specified in its reply, I take them each in turn, having done my best to key them to specific requests for production ("RFPs").

- RFP Nos. 1 and 2: Kolias has stated he does not possess any responsive documents. Kolias has adequately responded to these RFPs.

- RFP No. 4: Kolias has disputed the factual premise of this RFP, and stated he does not possess any responsive documents. Kolias has adequately responded to this RFP.

- RFP Nos. 6 and 7: Kolias's objection to this RFP as overbroad is sustained. But Kolias's date cutoff of February 4, 2022, is premature based on the timeline of Summit's allegations. Kolias shall produce

---

[23] Summit has not provided me the three pages of text messages Kolias produced. I assume the date sent is shown. If it is not, Kolias shall produce his text messages in a format that displays or permits an inference of the date (*e.g.*, showing "Yesterday" where the screenshot is sworn to be of a certain date).

text messages with Stanford relating to fire suppression, Florida Life, or this litigation from February 1, 2021 to the present. Kolias shall produce all attachments to text messages he produces. Kolias shall do so within 30 days. Further, Kolias may produce these text messages in the same form that he previously produced text messages.

- RFP Nos. 12 and 13: Kolias has stated there are no such documents or communications. Kolias has adequately responded to these RFPs.

And so, as to Summit's RFPs, Summit's motion is **GRANTED IN PART.**

## III. Summit's Fee Request

Summit's motion to compel requests reasonable attorneys' fees incurred in bringing the motion.[24] Kolias did not comply with the discovery requests until after Plaintiff filed this motion, which can form a basis for fee shifting.[25] But in this case, other circumstances render an award of attorneys' fees unjust. Summit has served a disproportionate number of subpoenas to date, and served Kolias with a confusing, legally unsound, and invasive notice of inspection to image his phone. In light of these circumstances, the relative resources of the parties, and the fact that Kolias is proceeding pro se, I find that awarding attorneys' fees would be unjust.

As to the specific requests addressed in the reply, Summit has prevailed on its motion only in small part. When a discovery motion is granted and part and denied in part, the Court "may . . . apportion the reasonable expenses incurred among the parties and persons in a just manner."[26] In doing so, the Court is to consider whether the nonmovant's position was substantially justified.[27] I conclude Kolias was substantially justified in the positions he has taken in discovery to date. Summit's request for fees is **DENIED.**

---

[24] Summit Mot. ¶ 31.

[25] *See* Ct. Ch. R. 37(a)(4)(A).

[26] Ct. Ch. R. 37(a)(4)(C).

[27] *See Tavistock Civic Ass'n, Inc. v. Owen*, 223 A.3d 436, at *2 (Del. 2019) (Table).

### IV. Summit's Subpoena for Kolias's Phone Records

Kolias's motion for protective order also seeks to quash Summit's June 23 subpoena to AT&T for a year of Kolias's phone records.[28] AT&T has not filed any objection or response to the subpoena. For its part, Summit filed an August 11, 2022, motion to compel AT&T's compliance with the subpoena.[29]

As Summit accurately points out, "when a subpoena is issued to a non-party, a party does not have standing to object to the subpoena unless production of documents pursuant to the subpoena would violate a privilege held by the objecting party."[30] AT&T's records of the dates and times that Kolias called or received calls from different numbers do not risk violating any such privilege.

But a party may also object where third-party discovery would impose a burden on that party.[31] When third-party discovery runs afoul of proportionality principles and unduly burdens a party, this Court will intervene.[32] Court of Chancery Rule 26 permits discovery that is relevant and proportional to the needs to the case. Discovery

> shall be limited by the Court if it determines that . . . the discovery sought is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery

---

[28] Kolias Mot. ¶ 15; D.I. 39.

[29] D.I. 70.

[30] *Cede & Co. v. Joule Inc.*, 2005 WL 736689, at *1 (Del. Ch. Feb. 7, 2005).

[31] *See In re Jeremy Paradise Dynasty Tr.,* 2022 WL 840074, at *1 (Del. Ch. Mar. 22, 2022).

[32] *See id.* (citing *Lions Gate Ent'mt Corp. v. Image Ent'mt, Inc.*, 2006 WL 1134172, at *1 (Del. Ch. Apr. 19, 2006)).

outweighs its likely benefit. The Court may act upon its own initiative after reasonable notice . . . .[33]

This Court has broad discretion in determining the scope of discovery.[34]

I repeat what I said above: Summit has barraged Kolias and third parties with discovery requests.[35] The issues in this action are whether Kolias is working for Summit's competitor and whether he has solicited any Summit customers. Kolias points out that Summit's claim that Kolias has violated his restrictive covenants is built on four discrete alleged incidents.[36] As his defense, Kolias has steadfastly maintained that he was terminated from Summit, that he has been unemployed since his termination, that Summit has confused him with his son, and that he has not solicited any Summit customers.[37] This may prove to be true or untrue, but Summit's spray of subpoenas is not focused on resolving these gating issues and is not proportional to the amount in controversy, the parties' relative access to the information sought in the subpoenas, and the parties' resources. I

---

[33] Ct. Ch. R. 26(b)(1).

[34] *See, e.g.*, *Mann v. Oppenheimer & Co.*, 517 A.2d 1056, 1061 (Del. 1986) ("The application of the discovery rules is subject to the exercise of the trial court's sound discretion."); *Fish Eng'g Corp. v. Hutchinson*, 162 A.2d 722, 725 (Del. 1960) ("The Court [of Chancery] has broad discretion in determining whether or not to allow discovery . . . ."); *Sutherland v. Sutherland*, 2007 WL 1954444, at *3 (Del. Ch. July 2, 2007) ("[T]he inherent equitable discretion of the Court of Chancery" grants the Court the power "to tailor discovery to a given set of facts").

[35] *See supra* note 4; *see* Summit Mot. at Ex. 5 (Kolias to Summit's counsel: "I'm sorry for the delay but you have been sending quite a lot. . . . I received the other requests you mentioned and I am working on them. . . . Will Summit agree to send me any documents you get?").

[36] Compl. ¶¶ 35, 45–50 (relating the observation of a competitor's truck outside a home Kolias contends he rents to his son, who works for the competitor; the "Fort Myers News Press" backflow preventer incident; the "Bonita Beach Plantation" truck incident, the "Fort Myers Beach Fire Department" email incident; and Summit employees leaving to join the competitor). Summit has withdrawn its subpoena to the Fort Myers News Press. D.I. 62.

[37] *See, e.g.*, D.I. 11; D.I. 12; D.I. 30; Kolias Mot. ¶ 4.

agree with Kolias that Summit's discovery to date resembles a fishing expedition, is not proportional, and is unduly burdensome on Kolias.

Kolias's motion is **GRANTED IN PART.** The AT&T subpoena is not quashed, but AT&T has not yet responded and Summit has filed a motion to compel AT&T to do so.[38] I will not take any action on that motion to compel at this time. Summit shall serve no further subpoenas or discovery requests until Kolias's document production is complete.

## V. Conclusion

I offer a summary of the parties' respective obligations going forward. Kolias shall respond to Summit's interrogatories and document requests as outlined above within 30 days. In particular, Kolias shall produce the attachments to the text messages he has already produced, and Kolias shall produce text messages with Stanford relating to fire suppression, Florida Life, or this litigation from February 1, 2021 to the present, including all attachments to any additional text messages he produces. Summit shall work with Kolias to obtain the documents it has requested in accordance with my guidance above.

Once Kolias has completed his document production, and once Summit has taken on the issue of whether Kolias is employed by its competitor and has engaged in the incidents alleged in its complaint, Summit may seek leave to pursue additional discovery. Summit must demonstrate that discovery is relevant and proportional.

Finally, I ask Summit to supplement its August 10, 2022, motion to extend fact discovery deadlines to accommodate the rulings in this letter.[39]

---

[38] D.I. 70.

[39] D.I. 68.

**IT IS SO ORDERED**.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc: All Counsel of Record, via *File & ServeXpress*